**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 28, 2022

**BY ECF and EMAIL**
The Honorable Naomi Reice Buchwald
Chief United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re: *United States v. Danilo Chavez Lozano*, 19 Cr. 826 (NRB)

Dear Judge Buchwald:

      The Government respectfully submits this letter in advance of sentencing of defendant Danilo Chavez Lozano, currently scheduled for April 11, 2022 at 2:30 p.m., and in response to defendant's sentencing memoranda dated March 22, 2022 ("Lozano Unsealed Memorandum" ▮ ▮).[1]

      In 2012 and 2013, the defendant laundered criminal proceeds on behalf of individuals he knew were connected to a criminal organization. Upon his arrest, he ▮ ▮ was allowed to plead guilty to a lesser charge, operating an unlicensed money transmitting business, ultimately receiving a probationary sentence. ▮ ▮ hat crime evinced serious disrespect for the law, ▮ ▮ When confronted and arrested by the DEA in June 2019, he then obstructed justice: when he was given access to his phone to place necessary telephone calls to inform his family members of his arrest and obtain his passport for Pretrial Services, he instead deleted his WhatsApp account, the primary manner by which he communicated with his contacts down in Venezuela that comprised his underlying criminal conduct.

      These were serious acts and merit a substantial punishment, particularly in light of Lozano's prior conviction for similar crimes. Lozano's prior no-jail sentence clearly did nothing to deter him from reoffending. The appropriate sentence is thus a period of incarceration.

---

[1] The Government will file a redacted version of this memo to the public docket.

### A. Offense Conduct

From in or about 2017 through June 2019, the defendant operated an unlicensed money transmitting business from Florida. (Presentence Investigation Report ("PSR") ¶ 17). Using bank accounts he had opened in the names of companies he owned, the defendant received large dollar transfers from various accounts, and then transferred them to other accounts in the United States and elsewhere, taking a fee for these transfers. (PSR ¶¶ 29–41). The defendant also had an ongoing relationship with individuals in the Venezuelan military. He had a close associate who was an officer in that military; he usually communicated with this associate via WhatsApp. (PSR ¶ 47). At the request of his associate, the defendant often bought consumer goods in the United States and shipped them to Venezuela. (PSR ¶ 43). In order to maintain this lucrative business, and at the request of his associate, he also transmitted money on behalf of senior members of the Venezuelan military.[2] (PSR ¶ 42).

### B. Procedural History

Lozano was arrested on a complaint in Florida on June 4, 2019. He was detained until June 10, 2019, when he was bailed. He appeared before the magistrate court in this District on June 18, 2019, and bail conditions were continued. He was indicted on operating an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 1960, and pleaded guilty to the single-count before this Court on December 14, 2021.

### C. Presentence Investigation Report

The Probation Office has calculated the offense level as follows, and as consistent with the plea agreement: (1) pursuant to U.S.S.G. § 2S1.3, the base offense level is 6; (2) pursuant to U.S.S.G. § 2S1.3(b)(3), because the Government cannot establish that the defendant acted with reckless disregard of the source of the funds, that the funds were the proceeds of unlawful activity, or that the funds were to be used to an unlawful purpose, the offense level remains 6; (3) pursuant to U.S.S.G. §3C1.1, because the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice by deleting his WhatsApp account, two levels are added; (4) two levels are removed for acceptance of responsibility, so the specific offense level is 6. (PSR ¶¶ 53–61). The defendant was convicted of violating 18 U.S.C. § 1960 in the Southern District of Florida in 2013, and was sentenced to probation, which means he has one criminal history point and is Criminal History Category I.

This offense level and criminal history category lead to a Guidelines range of 0 to 6 months' imprisonment. (PSR ¶ 104.) The Government agrees with the Probation Office's calculation.

---

[2] The defendant ███████████████████ states that he received money transfers on behalf of the senior members of the Venezuelan military when they sent over-payments for the goods, which they expected him to transfer. The Government's evidence, including from the defendant's post-arrest statement, is that on some occasions the defendant simply transmitted money received from the Venezuelans, without any over-payment.

The Probation Office has recommended that the Court sentence the defendant to a sentence of time served, with two years of supervised release. (PSR p. 27.)

**D. Defendant's Sentencing Memoranda**

In the defendant's Memoranda, he requests a time-served sentence with no supervised release, because of his family circumstances, the lesson his arrest taught him, his agreement to forfeit hundreds of thousands of dollars, possible adverse immigration consequences, and his attempted cooperation with law enforcement investigations.

**E. An Incarceratory Sentence Within the Stipulated Guidelines Range is Appropriate**

As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). District courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Gall v. United States*, 552 U.S. 38, 49 (2007). In this case, the sentencing factors of 18 U.S.C. § 3553(a) counsel in favor of an incarceratory sentence, within the Sentencing Guidelines.

The defendant committed a serious crime. This case highlights the dangers of unlicensed money transmitting. In September 2018, the Department of Treasury added Vladimir Padrino Lopez, the Venezuelan Defense Minister, to the Specially Designated Nationals And Blocked Persons List. That sanction meant that U.S. persons could not transact with Padrino Lopez, and thus it was more difficult for Padrino Lopez, and the Venezuelan military more generally, to receive banking services or purchase goods through legitimate means. Instead, those individuals had to use shadow banking systems like that operated by the defendant.[3] That allowed them to evade anti-money laundering checks, and transact in ways that would otherwise be foreclosed.

A particularly aggravating factor meriting an incarceratory sentence is the defendant's criminal history. The defendant avoided serious punishment for his 2012 money laundering offense, ▇▇▇▇ negotiating a favorable resolution to a violation of Title 18, United States Code, Section 1960, and receiving no jail time.  Another no jail sentence would serve no deterrent purpose, and could very well lead the defendant to recidivate once more. Further, meaningful punishment

---

[3] The defendant's conduct, both in providing money transmitting services and purchasing goods on behalf of high-ranking members of the Venezuelan defense establishment, may also have violated U.S. sanctions on Venezuela. The Government determined it did not have evidence to establish that the defendant criminally violated U.S. sanctions: for example, the Government does not have information that the defendant transmitted money on behalf of Padrino Lopez himself or that the defendant knew of the U.S. sanctions against Padrino Lopez, as required for a criminal violation of the International Emergency Economic Powers Act. However, in his post-arrest statement, the defendant admitted that he did know that his contacts in the Venezuelan military ultimately worked for Padrino Lopez.

is required to send a message of general deterrence: "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006). This case evidences that point: his complex wire transfers were relatively difficult to unwind, and the defendant was able to operate the illegal business for years before detection.



But the defendant's requested sentence of time-served is insufficient to meet the purposes of Section 3553. The defendant cites to his family circumstances, but he did the same after his 2013 conviction. *See* United States v. Lozano, 13 Cr. 20242 (S.D. Fla.), Dkt. No. 55 at 5 (prior sentencing transcript) (defense counsel argued in favor of a non-incarceratory sentence that "He's a hardworking individual, a very responsible father. The mother of his child is here in support of him."). While the defendant now says he has "learned a harsh lesson," the Court cannot rely on that self-serving statement, given his prior conviction and underlying offense conduct. Nor could the forfeiture of criminal proceeds stand in for a meaningful sentence of incarceration, especially where, as here, the defendant has assets of over a million dollars. (PSR ¶ 91). Additionally, while the Government cannot opine on the potential immigration consequences of the defendant's conviction, the Government understands that the crime of conviction does not automatically carry collateral consequences. 8 U.S.C. § 1101(43)(D) (aggravated felony for immigration purposes includes money laundering under 18 U.S.C. §§ 1956 and 1957, but not operating an unlicensed money services business under § 1960).                                                                                          s.

Danilo Chavez Lozano committed a serious crime, operating a shadow bank which allowed members of an adversarial military force to transfer money.                                     When arrested, he continued his deceit, using a pause in his processing to delete his main means of criminal communication with his compatriots. Those factors merit

serious punishment: a period of incarceration, within the Stipulated Guidelines Range of 0 to 6 months is appropriate in this case.[4]

        Very truly yours,

        DAMIAN WILLIAMS
        United States Attorney


by: /s Samuel L. Raymond
    Samuel L. Raymond
    Assistant United States Attorney
    (212) 637-6519

cc: Lisa Scolari, Esq. (by email)

---

[4] The Government will also submit a proposed Consent Preliminary Order of Forfeiture before sentencing.